Donald H. Cram
Tex. State Bar No. 05000300
dhc@severson.com
SEVERSON & WERSON
A Professional Corporation
One Embarcadero Center, Suite 2600
San Francisco, California 94111
Telephone: (415) 398-3344
Facsimile: (415) 956-0439

Attorneys for Secured Creditor
NISSAN MOTOR ACCEPTANCE
COMPANY LLC

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF TEXAS

# DALLAS DIVISION

| | |
|---|---|
| In re Stephanie Morris Nissan LLC | Case No. 24-30310-mvl |
| | Chapter 7 |
| Debtor. | |
| Nissan Motor Acceptance Company LLC, | |
| Movant, | |
| v. | |
| Stephanie Morris Nissan LLC, and Daniel J. Sherman, Trustee, | |
| Respondents. | |

**NISSAN MOTOR ACCEPTANCE COMPANY LLC'S MOTION FOR RELIEF FROM THE AUTOMATIC STAY**

NMAC, secured creditor in this Chapter 7 Case, submits this Motion respectfully requesting that the Court grant relief from the automatic stay allowing NMAC to complete its disposition of certain vehicle collateral, which was repossessed prepetition, and in support would show the Court as follows:

## BACKGROUND

1. NMAC provides floor plan financing, which is also known as "flooring" or inventory lending. By floor plan financing, automotive dealers receive loans from NMAC to pay vehicle manufacturers for the purchase of new vehicles. When a dealer sells a "floored" vehicle, it must repay the loan owed to NMAC for that vehicle within deadlines contractually agreed to by the dealer. NMAC has a security interest in the vehicle to secure the loan payment. If the dealer fails to repay the flooring loan after the vehicle is sold, in effect converting the borrowed loan funds to its own use, the dealer breaches its financing agreement with NMAC and is said to be "sold out of trust" or "SOT". Because the floored vehicles are NMAC's primary collateral source for repayment of the flooring loans, it demands immediate payment of SOT obligations.

2. The process by which a dealer obtains financing for used vehicles differs from the process by which it obtains new vehicles, but the lending is similar. On its own initiative, dealers search for, select, and purchase used vehicles from auctions and other sources. To purchase these vehicles, dealers have to request funding from NMAC to add those used vehicle purchases to their floor plan. But in the same fashion as new vehicles, when a used vehicle is sold the dealer contractually agrees to timely pay NMAC the flooring loan for that used vehicle.

3. Under floor financing, NMAC requires a dealer to pay the unpaid balance of any flooring loan with respect to a vehicle at or near the date on which the vehicle was sold, leased, or placed into use by the dealer. Failure to comply with this payment obligation constitutes a breach of the financing agreements. If a vehicle is sold, leased, or otherwise unaccounted for, and the out-standing balance is not paid off as required, the vehicle is deemed SOT. In addition to payment of flooring loans as vehicles are sold, the dealer must pay interest on the total principal balance of all the flooring loans. Interest is due on a monthly basis.

06888.0323/16744532.1

4. NMAC's normal custom and practice is to conduct periodic inventory or vehicle "audits" to count the vehicles on the dealer lot to confirm that dealer-borrowers are complying with their loan repayment requirements. These inventory audits can occur as little as twice a year, or as often as once a month or more. During its inventory audits, NMAC's auditors visit the dealership to count the vehicles and determine whether a dealer-borrower is repaying NMAC in compliance with its obligations. If NMAC discovers a sold vehicle for which loan repayment is due, or if NMAC identifies a vehicle which has been removed from the dealership premises, NMAC makes demand for payment of the flooring loan for that vehicle at the conclusion of the audit. If the loan repayment is not made, then the vehicle is deemed SOT.

5. NMAC is harmed when a dealer sells a vehicle "SOT" because NMAC's collateral cannot be recovered. A SOT is a material breach of the financing agreement because the dealer's debt to NMAC becomes unsecured – NMAC cannot recover a vehicle sold to a customer in the ordinary course of business under the Uniform Commercial Code.

## Wholesale Financing Agreement

6. On or about January 13, 2022, Stephanie Morris Nissan LLC ("Dealer" or "Debtor") entered into an Automotive Wholesale Financing and Security Agreement ("Wholesale Agreement"), by which NMAC agreed to finance Dealer's acquisition of new and used automobiles, trucks and other vehicles.

7. In consideration of NMAC's agreement to finance Dealer's business, and to secure Dealer's obligations under the Wholesale Agreement owed to NMAC, Dealer granted NMAC a security interest in all of the following:

> 2.4.1 Property, including all automobiles, trucks, truck-tractors, trailers, semi-trailers, buses, mobile homes, motor homes, other vehicles and other merchandise, and all parts, accessories, attachments, components and furnishings whether or not affixed thereto or used in connection therewith, including all goods hereafter added to or acquired in replacement or substitution of the foregoing, whether or not inventory or other and whether or not new, used, repossessed, surrendered or other;

2.4.2 All other goods, including without limitation, all inventory, machinery, equipment, tools, appliances, and office furniture and fixtures, including all goods hereafter added to or acquired in replacement of the foregoing;

2.4.3 All accounts, accounts receivable, chattel paper, security agreements, instruments, contract rights, leases of property, all rentals due or to become due under any lease of any property, all other rentals, policies and certificates of insurance, deposit accounts, investment property, dealer reserve accounts, manufacturer's statements of origin (MSO's) or certificates of title or ownership relating to vehicles, bills of sale, receipts, journals, records, files, books and ledger sheets, records indicating, summarizing or evidencing Dealer's business operations or financial condition and all computer programs, disk or tape files, printouts, runs or other computer-prepared information and the equipment containing such information, documents and general intangibles, including all monies and credits now due or to become due to Dealer from, and all claims against, vendors or inventory or other lending institutions;

2.4.4 All other assets of Dealer, with the exception of real property, but including fixtures; and

2.4.5 All cash and non-cash proceeds of the foregoing.
(Collectively referred to as the "Collateral" with the vehicle collateral referred to from time to time as "Vehicle" or the "Vehicles").

8. NMAC perfected its security interests in the Collateral by filing UCC-1 financing statements and amendments with the Office of the Secretary of State of Texas. NMAC filed its original UCC-1 financing statement on January 11, 2022, as instrument number 220001508492.

9. Under the terms of the Wholesale Agreement at paragraph 2.3.2, Dealer promised to hold in trust and pay, without demand, the unpaid balance of any advance made by NMAC with respect to a Vehicle at or near the date on which the Vehicle was sold, leased, or placed into use by Dealer.

### Defaults by Dealer

10. On or about September 14, 2023, NMAC conducted a wholesale inventory audit of Dealer. Based upon that audit NMAC determined that Dealer had sold Vehicles in breach of the Wholesale Agreement by failing to pay NMAC promptly after Dealer's receipt of the

06888.0323/16744532.1

proceeds of the sale or lease of these Vehicles.

11. By letter dated September 18, 2023, NMAC provided notice to Dealer that it was in default under the Wholesale Agreement. NMAC demanded the Dealer cure the SOT defaults by close of business September 19, 2023. Dealer failed to comply with the demands NMAC made upon it in the September 18, 2023 letter.

12. By letter dated September 21, 2023, NMAC provided notice to Dealer that it remained in default under the Wholesale Agreement and demanded that Dealer fully cure the default by September 22, 2023. Dealer failed to comply with the demands NMAC made upon it in the September 21, 2023 letter.

13. NMAC continued to conduct floorplan inventory audits and identified additional defaults. As of October 3, 2023, Dealer had sold fourteen (14) SOT Vehicles to third-party customers and had failed to pay NMAC the amount financed on those 14 Vehicles. The amount in default for the sale of these 14 SOT Vehicles is $330,734.12.

14. As of October 3, 2023, Dealer ceased operations as a retail automotive dealership.

15. NMAC has performed all conditions, covenants and promises required of it in accordance with the terms and conditions of the Wholesale Agreement.

16. As of January 31, 2024, Dealer's outstanding indebtedness owed to NMAC under the Wholesale Agreement totaled $1,351,718.79, broken down as follows:

Wholesale Agreement

| | |
|---|---|
| Principal Balance: | $1,232,949.87 |
| Interest and Fees: | $120,211.03 |
| Contractor & Vendor Fees: | $12,489.73 |
| less suspense funds: | ($13,931.84) |
| **Outstanding Balance:** | **$1,351,718.79** |

17. Beginning on or about October 7, 2023, NMAC repossessed its vehicle collateral that remained at the Dealer's premises.

18. On February 1, 2024, Dealer filed for relief under Chapter 7 of the Bankruptcy

06888.0323/16744532.1

Code.

19. The total value of the Repossessed Vehicle Collateral subject to NMAC's security interest is approximately $696,500, while Dealer's outstanding balance owed under the Wholesale Agreement totals $1,351,718.79. Thus, the Repossessed Vehicle Collateral is worth approximately $655,218.79 less than what it is owed under the Wholesale Agreement.

20. On March 14, 2024, the Chapter 7 Trustee filed a Report of No Distribution.

21. NMAC has not disposed of the Repossessed Vehicle Collateral and seeks relief from the automatic stay to complete its disposition and apply any proceeds from the disposition to the balances Dealer owes NMAC.

## GROUNDS FOR VACATING AUTOMATIC STAY

Nothing in § 362(d) expressly limits a secured creditor who seeks only to foreclose upon specific property from obtaining relief from the automatic stay. *Delta Savs. & Loan Ass'n v. IRS*, 847 F.2d 248, 250 (5th Cir. 1988); *In re Timbers of Inwood Forest Assocs, Ltd*., 793 F.2d 1380, 1388 (5th Cir. 1986). Debtors carries the burden of proof on the issue of adequate protection. 11 U.S.C. §§ 362(g) and 363(p). Debtor's business is closed and is not generating any operating capital to reopen the dealership or to pay NMAC the amounts that Debtor owes.

Debtor cannot carry its burden on the issue of adequate protection, and Debtor is not in a position to provide NMAC with adequate protection.

    **A.**    **NMAC is Entitled to Relief from Stay for Cause, Including Lack of Adequate Protection**

A party may seek relief from the stay "for cause, including lack of adequate protection of an interest in property." 11 U.S.C. § 362(d)(1). In other words, the continuation of the automatic stay depends upon whether a secured creditor's interest in property is adequately protected. *See In re Stembridge*, 394 F.3d 383, 387 (5th Cir. 2004).

NMAC is entitled to relief from stay for cause and lack of adequate protection pursuant to 11 U.S.C. § 362(d)(1). Debtors are in default under the terms of the Loan Agreements and have

sold vehicles "out of trust" or "SOT". NMAC's vehicle collateral, which was repossessed prior to the bankruptcy filing, consist of depreciating assets that lose value every day. Debtor dealership is closed and is not selling vehicles or otherwise generating any income. Debtors carries the burden of proof on the issue of adequate protection. 11 U.S.C. §§ 362(g) and 363(p). The vehicle collateral is in NMAC's possession and continues to deteriorate in value. NMAC is not adequately protected and relief from stay should be granted pursuant to 11 U.S.C. § 362(d)(1).

### B. NMAC is Entitled to Relief Because there is Little or No Equity in the Vehicles for the Estate and the Vehicles are not Necessary for an Effective Reorganization

NMAC is entitled to relief from stay pursuant to 11 U.S.C. § 362(d)(2). The total amount that the Debtors owes NMAC is approximately $1.35 million.

NMAC maintains that, the value of the vehicle inventory is approximately $700,000. NMAC estimates that there is little to no value in Debtor's non-vehicle assets.

Accordingly, NMAC asserts that it is undersecured. The total indebtedness owed to NMAC is approximately $1.3 million. This leaves NMAC undersecured in the approximate amount of $655,000.

Debtors have no means to satisfy their secured creditors – let alone their unsecured creditors. The dealership is closed and there is no pending sale of the dealership. There is no equity in the assets of the estate and, given this is a Chapter 7 proceeding, there is no likelihood of a reorganization that is in prospect. The Chapter 7 trustee has filed a report of no distribution. Accordingly, NMAC has satisfied the conditions to vacate the automatic stay as set forth under *United Savings Ass'n of Texas v. Timbers of Inwood Forest Associates, Ltd.*, 484 US 365, 108 S.Ct. 626, 98 L.Ed2d 740 (1988) and therefore is entitled to relief from the automatic stay under § 362(d)(2).

### CONCLUSION

For the reasons set forth above, NMAC respectfully requests that this Court:

06888.0323/16744532.1

      1.      Issue an order granting relief from the automatic stay authorizing NMAC to enforce its security interests in its Collateral including but not limited to disposing of NMAC's vehicle collateral pursuant to applicable law;

      2.      Waive the 14 day waiting period under Bankruptcy Rule 4001(a)(3);

      3.      Issue an order directing Debtors to turnover and surrender the Collateral to NMAC; and

      4.      Enter such other and further relief as this Court deems necessary and proper.

DATED: March 29, 2024        SEVERSON & WERSON
                                      A Professional Corporation


                                      By:     /s/ Donald H. Cram
                                                        Donald H. Cram

                                      Attorneys for Secured Creditor
                                      NISSAN MOTOR ACCEPTANCE COMPANY LLC

### **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the foregoing has been served electronically by the Court's ECF System on all parties registered to receive such service on the 30th day of March, 2024.

The undersigned also hereby certifies that a true and correct copy of the foregoing has been served by regular U.S. mail on the debtor at 3815 NW Pkwy., Dallas, TX 75225 on the 30th day of March, 2024.

  /s/ Donald H. Cram
Donald H. Cram

06888.0323/16744532.1