Donald H. Cram
Cal. State Bar No. 160004
Tex. State Bar No. 05000300
dhc@severson.com
SEVERSON & WERSON
A Professional Corporation
One Embarcadero Center, Suite 2600
San Francisco, California 94111
Telephone: (415) 398-3344
Facsimile: (415) 956-0439

Attorneys for Secured Creditor
NISSAN MOTOR ACCEPTANCE
COMPANY LLC

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF TEXAS

## DALLAS DIVISION

| In re Stephanie Morris Nissan LLC | Case No. 24-30310-mvl |
|---|---|
|  | Chapter 7 |
| Debtor. |  |

### AFFIDAVIT OF GREGORY BROWN IN SUPPORT OF NISSAN MOTOR ACCEPTANCE COMPANY LLC'S MOTION FOR RELIEF FROM THE AUTOMATIC STAY

I, , being over the age of eighteen years old, and being first duly sworn, affirm and swear as follows:

1.   I am employed by Nissan Motor Acceptance Company LLC ("NMAC"), a secured creditor in the above reference bankruptcy proceeding, as a Manager in Special Credit. I am responsible for the Stephanie Morris Nissan, LLC ("Dealer") account. I make this affidavit based either upon my own personal and first-hand knowledge or upon the business records of NMAC. As a Manager in Special Credit, I am authorized to make this affidavit on behalf of NMAC.

2. My duties at NMAC include serving as custodian of records on behalf of NMAC. I am familiar with the manner and procedures by which the records, letters and memoranda contained in NMAC's files are prepared and maintained. Those records, letters and memoranda are prepared by agents or employees of NMAC in performance of their regular business duties. Those records, letters and memoranda are made either by persons with knowledge of the matters they record or from information supplied by persons with such knowledge. It is NMAC's regular business practice to maintain such records, letters or memoranda in the course of its business. The documents herein contained and referenced are business records produced and maintained in this above described manner. Except as otherwise specifically stated in this Affidavit, the facts set forth herein are based on my review of the files to this account and if called as a witness I could and would be competent to testify to those facts.

### Mechanics of "Floor Plan" or "Inventory" Financing

3. NMAC provides floor plan financing, which is also known as "flooring" or inventory lending. By floor plan financing, automotive dealers receive loans from NMAC to pay vehicle manufacturers for the purchase of new vehicles. When a dealer sells a "floored" vehicle, it must repay the loan owed to NMAC for that vehicle within deadlines contractually agreed to by the dealer. NMAC has a security interest in the vehicle to secure the loan payment. If the dealer fails to repay the flooring loan after the vehicle is sold, in effect converting the borrowed loan funds to its own use, the dealer breaches its financing agreement with NMAC and is said to be "sold out of trust" or "SOT". Because the floored vehicles are NMAC's primary collateral source for repayment of the flooring loans, it demands immediate payment of SOT obligations.

4. The process by which a dealer obtains financing for used vehicles differs from the process by which it obtains new vehicles, but the lending is similar. On its own initiative, dealers search for, select, and purchase used vehicles from auctions and other sources. To purchase these vehicles, dealers have to request funding from NMAC to add those used vehicle purchases to their floor plan. But in the same fashion as new vehicles, when a used vehicle is sold the dealer contractually agrees to timely pay NMAC the flooring loan for that used vehicle.

5. Under floor financing, NMAC requires a dealer to pay the unpaid balance of any

flooring loan with respect to a vehicle at or near the date on which the vehicle was sold, leased, or placed into use by the dealer. Failure to comply with this payment obligation constitutes a breach of the financing agreements. If a vehicle is sold, leased, or otherwise unaccounted for, and the out-standing balance is not paid off as required, the vehicle is deemed SOT. In addition to payment of flooring loans as vehicles are sold, the dealer must pay interest on the total principal balance of all the flooring loans. Interest is due on a monthly basis.

6. NMAC's normal custom and practice is to conduct periodic inventory or vehicle "audits" to count the vehicles on the dealer lot to confirm that dealer-borrowers are complying with their loan repayment requirements. These inventory audits can occur as little as twice a year, or as often as once a month or more. During its inventory audits, NMAC's auditors visit the dealership to count the vehicles and determine whether a dealer-borrower is repaying NMAC in compliance with its obligations. If NMAC discovers a sold vehicle for which loan repayment is due, or if NMAC identifies a vehicle which has been removed from the dealership premises, NMAC makes demand for payment of the flooring loan for that vehicle at the conclusion of the audit. If the loan repayment is not made, then the vehicle is deemed SOT.

7. NMAC is harmed when a dealer sells a vehicle "SOT" because NMAC's collateral cannot be recovered. A SOT is a material breach of the financing agreement because the dealer's debt to NMAC becomes unsecured – NMAC cannot recover a vehicle sold to a customer in the ordinary course of business under the Uniform Commercial Code.

### Wholesale Financing Agreement

8. On or about January 13, 2022, Dealer entered into an Automotive Wholesale Financing and Security Agreement ("Wholesale Agreement"), by which NMAC agreed to finance Dealer's acquisition of new and used automobiles, trucks and other vehicles. A copy of the Wholesale Agreement is attached as **Exhibit 1** and incorporated by this reference.

9. In consideration of NMAC's agreement to finance Dealer's business, and to secure Dealer's obligations under the Wholesale Agreement owed to NMAC, Dealer granted NMAC a security interest in all of the following:

  2.4.1 Property, including all automobiles, trucks, truck-tractors, trailers,

semi-trailers, buses, mobile homes, motor homes, other vehicles and other merchandise, and all parts, accessories, attachments, components and furnishings whether or not affixed thereto or used in connection therewith, including all goods hereafter added to or acquired in replacement or substitution of the foregoing, whether or not inventory or other and whether or not new, used, repossessed, surrendered or other;

2.4.2   All other goods, including without limitation, all inventory, machinery, equipment, tools, appliances, and office furniture and fixtures, including all goods hereafter added to or acquired in replacement of the foregoing;

2.4.3   All accounts, accounts receivable, chattel paper, security agreements, instruments, contract rights, leases of property, all rentals due or to become due under any lease of any property, all other rentals, policies and certificates of insurance, deposit accounts, investment property, dealer reserve accounts, manufacturer's statements of origin (MSO's) or certificates of title or ownership relating to vehicles, bills of sale, receipts, journals, records, files, books and ledger sheets, records indicating, summarizing or evidencing Dealer's business operations or financial condition and all computer programs, disk or tape files, printouts, runs or other computer-prepared information and the equipment containing such information, documents and general intangibles, including all monies and credits now due or to become due to Dealer from, and all claims against, vendors or inventory or other lending institutions;

2.4.4   All other assets of Dealer, with the exception of real property, but including fixtures; and

2.4.5   All cash and non-cash proceeds of the foregoing.
(Collectively referred to as the "Collateral" with the vehicle collateral referred to from time to time as "Vehicle" or the "Vehicles").

10.   NMAC perfected its security interests in the Collateral by filing UCC-1 financing statements and amendments with the Office of the Secretary of State of Texas. NMAC filed its original UCC-1 financing statement on January 11, 2022, as instrument number 220001508492. A copy of NMAC's UCC-1 financing statement is attached as **Exhibit 2** and incorporated by this reference.

11.   Under the terms of the Wholesale Agreement at paragraph 2.3.2, Dealer promised to hold in trust and pay, without demand, the unpaid balance of any advance made by NMAC with respect to a Vehicle at or near the date on which the Vehicle was sold, leased, or placed into

use by Dealer.

12. Under the terms of the Wholesale Agreement at paragraph 5.1.3, any default by Dealer or any affiliate under any present or future agreement with NMAC is a default under the Wholesale Agreement.

## Defaults by Dealer

13. On or about September 14, 2023, NMAC conducted a wholesale inventory audit of Dealer. Based upon that audit NMAC determined that Dealer had sold Vehicles in breach of the Wholesale Agreement by failing to pay NMAC promptly after Dealer's receipt of the proceeds of the sale or lease of these Vehicles.

14. By letter dated September 18, 2023, NMAC provided notice to Dealer that it was in default under the Wholesale Agreement. NMAC demanded the Dealer cure the SOT defaults by close of business September 19, 2023. Dealer failed to comply with the demands NMAC made upon it in the September 18, 2023 letter.

15. By letter dated September 21, 2023, NMAC provided notice to Dealer that it remained in default under the Wholesale Agreement and demanded that Dealer fully cure the default by September 22, 2023. Dealer failed to comply with the demands NMAC made upon it in the September 21, 2023 letter.

16. NMAC continued to conduct floorplan inventory audits and identified additional defaults. As of October 3, 2023, Dealer had sold fourteen (14) SOT Vehicles to third-party customers and had failed to pay NMAC the amount financed on those 14 Vehicles. The amount in default for the sale of these 14 SOT Vehicles is $330,734.12.

17. As of October 3, 2023, Dealer ceased operations as a retail automotive dealership.

18. NMAC has performed all conditions, covenants and promises required of it in accordance with the terms and conditions of the Wholesale Agreement.

19. As of January 31, 2024, Dealer's outstanding indebtedness owed to NMAC under the Wholesale Agreement totaled $1,351,718.79, broken down as follows:

Wholesale Agreement

    Principal Balance:        $1,232,949.87

| | |
|---|---|
| Interest and Fees: | $120,211.03 |
| Contractor & Vendor Fees: | $12,489.73 |
| less suspense funds: | ($13,931.84) |
| **Outstanding Balance:** | **$1,351,718.79** |

20.   Beginning on or about October 7, 2023, NMAC repossessed its vehicle collateral that remained at the Dealer's premises. A listing of the vehicle collateral repossessed by NMAC organized by VIN, make, model, year, flooring date, new/used status, loan balance and estimated valuation, is set forth in the attached **Exhibit 3** (the "Repossessed Vehicle Collateral").

21.   On February 1, 2024, Dealer filed for relief under Chapter 7 of the Bankruptcy Code.

22.   The total value of the Repossessed Vehicle Collateral subject to NMAC's security interest is approximately $696,500, while Dealer's outstanding balance owed under the Wholesale Agreement totals $1,351,718.79. Thus, the Repossessed Vehicle Collateral is worth approximately $655,218.79 less than what it is owed under the Wholesale Agreement.

23.   On March 14, 2024, the Chapter 7 Trustee filed a Report of No Distribution.

*****

24. NMAC has not disposed of the Repossessed Vehicle Collateral and seeks relief from the automatic stay to complete its disposition and apply any proceeds from the disposition to the balances Dealer owes NMAC.

Further, Affiant Sayeth Naught.

_____
Gregory Brown

## LOUISIANA NOTARY ACKNOWLEDGEMENT

### (INDIVIDUAL)

State of Louisiana

Parish of __ORLEANS__

On this __2__ day of __April__, 20__24__, before me personally appeared Gregory Brown, to me known to be the person (or persons) described in and who executed the foregoing instrument, and acknowledged that he (or they) executed it as his (or their) free act and deed.

_____
Signature of notarial officer

MARIELOU T RAY
Notary Public # 86505
State of Louisiana
Jefferson Parish
Statewide Jurisdiction
My Commission is for Life

__NOTARY PUBLIC__
[Title (and Rank)]

Notary ID Number: __86505__

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing has been served electronically by the Court's ECF System on all parties registered to receive such service on the 3rd day of April, 2024.

The undersigned also hereby certifies that a true and correct copy of the foregoing has been served by regular U.S. mail on the debtor at 3815 NW Pkwy., Dallas, TX 75225 on the 3rd day of April, 2024.

　　　　　　　　　　　　　　　　　　　/s/ Donald H. Cram
　　　　　　　　　　　　　　　　　　　Donald H. Cram